# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CATHERINE WOYTOWICZ,      :
      :
    Plaintiff,      :    Civil Action No.:   17-2703 (RC)
      :
    v.      :    Re Document No.:   10
      :
THE GEORGE WASHINGTON      :
UNIVERSITY, *et al.*,      :
      :
    Defendants.      :

## <u>MEMORANDUM OPINION</u>

**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; REMANDING REMAINING STATE LAW CLAIMS TO D.C. SUPERIOR COURT**

## I. INTRODUCTION

Plaintiff Catherine Woytowicz filed this suit to challenge both the process and outcome of an investigation into her alleged violation of Title IX while she was employed as a part-time professor at The George Washington University ("University"). She has brought constitutional claims against the University and several of its employees for violations of her rights under the First and Fifth Amendments to the United States Constitution, a federal claim under the Ku Klux Klan Act, as well as common law and District of Columbia statutory claims for breach of contract, intentional infliction of emotional distress, discrimination, retaliation, and harassment. Defendants have moved to dismiss her complaint for failure to state a claim, arguing that the University and its employees cannot be liable to Professor Woytowicz for constitutional violations because the University and its employees are not government actors, that her contract claim is preempted by the Labor Management Relations Act ("LMRA") and has not been properly exhausted, and that her remaining state law claims are insufficiently pleaded to survive

Defendants' motion to dismiss for failure to state a claim. For the reasons given below, the Court dismisses Professor Woytowicz's constitutional claims because she has not sufficiently alleged that the University and its employees were government actors or performing a governmental function when they investigated and disciplined her. The Court also dismisses one of her breach of contract claims as preempted by the LMRA and insufficiently exhausted. Finally, finding that the circumstances of this case do not warrant the exercise of supplemental jurisdiction, the Court remands Professor Woytowicz's remaining state law claims to D.C. Superior Court.

## II. FACTUAL BACKGROUND[1]

Professor Catherine Woytowicz served as a part-time faculty member at The George Washington University from 2000 to 2017, teaching both in the Department of Chemistry and at the Elliott School of International Affairs. Am. Compl. ¶¶ 9–13. Professor Woytowicz was recognized both by the University and her students for her excellence in teaching. *See id.* ¶¶ 44– 55. In 2013, she received an award for her teaching in a "Writing in the Discipline" course and was also nominated by students for several other teaching awards. *Id.* In addition to teaching numerous courses at the University, *see id.* ¶¶ 10–13, Professor Woytowicz actively mentored students on a personal and professional basis, and as a result, often received thank you emails and notes. *See id.* ¶¶ 56–57; *see also* Am. Compl. Ex. 2, ECF No. 9-2 (fifty-nine thank you emails from students expressing their appreciation toward Professor Woytowicz for her teaching, guidance, and assistance with various applications).

As a part-time faculty member at the University, Professor Woytowicz was a member of the Service Employees International Union, Local 500, CTW ("Union"), which had a Collective

---

[1] At the motion to dismiss stage, the Court accepts the plaintiff's factual allegations as true. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Bargaining Agreement ("CBA") with the University at all times relevant to this case. *Id.* ¶¶ 34–35. Because Professor Woytowicz had held each of her teaching assignments for more than five academic years, she was entitled to receive "good faith consideration for appointment to teach the same course[s]" under Article V, Part C of the CBA. *Id.* ¶¶ 35–37.

On March 17, 2016, Rory Muhammad, the University's Director for Diversity and Inclusion and Title IX Coordinator, notified Professor Woytowicz via email that a male student had filed a complaint against her under the University's Title IX Policy, and that the University intended to investigate the complaint. Am. Compl. ¶¶ 61, 78. Title IX of the Education Amendments of 1972 is a federal civil rights statute enforced by the U.S. Department of Education's Office for Civil Rights ("OCR"). *See generally* 20 U.S.C. §§ 1681–88. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). OCR enforces Title IX by evaluating, investigating, and resolving complaints alleging sex discrimination, and also "conducts proactive investigations, called compliance reviews, to examine potential systemic violations based on sources of information other than complaints." U.S. Dep't of Educ., Title IX and Sex Discrimination, https://www2.ed.gov/about/offices/list/ocr/docs/tix_dis.html (last visited August 20, 2018). OCR also publishes informational and guidance documents to assist schools, universities, and other agencies in complying with Title IX requirements. *Id.*

OCR regulations govern the enforcement of Title IX. *See generally* 34 C.F.R. § 106. Among other requirements, the regulations mandate that (1) "[e]ach recipient . . . designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities

under this part, including any investigation of any complaint communicated to such recipient alleging its noncompliance with this part," and (2) "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8. As a recipient of federal funds, Am. Compl. ¶¶ 302–04, the University was subject to the requirements of Title IX at all times relevant to this case. *Id.* ¶ 306. To comply with OCR regulations, the University assigned Rory Muhammad as its Title IX coordinator; his responsibilities included investigating complaints and carrying out grievance procedures adopted by the University. *Id.* ¶¶ 309–12; *see* 34 C.F.R. § 106.8(a).

In 2011, the University entered into a Voluntary Resolution Agreement with OCR in order to resolve an OCR investigation into the University's compliance with Title IX. *See* U.S. Dep't of Educ., Resolution Agreement, OCR Complaint No. 11-11-2079, https://www2.ed.gov/about/offices/list/ocr/docs/investigations/11112079-b.html (last visited August 20, 2018). As part of the Agreement, the University agreed that by a certain date it would "submit to OCR for its review and approval draft revised procedures that provide for prompt and equitable resolution of complaints of sexual violence consistent with Title IX." *See* Resolution Agreement ¶ 1. The Agreement also included instructions for providing notice of approved procedures and developing training programs to help employees "recogniz[e] and appropriately address[] complaints of sex harassment." *See* Resolution Agreement ¶¶ 6–9.

On March 23, 2016, Professor Woytowicz met with Mr. Muhammad in person. Am. Compl. ¶¶ 79–81. At this meeting, Mr. Muhammad told Professor Woytowicz that there had been "an allegation of sexual harassment based on unequal power." *Id.* ¶ 84. Because she found the allegations to be vague, Professor Woytowicz requested that Mr. Muhammad provide further

details of the accusations against her and the documents on which he was relying, but he did not comply with her requests. *Id.* ¶¶ 85, 94. Mr. Muhammad expressed his desire to resolve the complaint through an informal resolution, which he suggested would only result in a written reprimand, but Professor Woytowicz did not acquiesce. *Id.* ¶ 94. Professor Woytowicz alleges that Mr. Muhammad also asked her inappropriate questions during the meeting. *Id.* ¶ 101.

On March 24, 2016, Mr. Muhammad sent Professor Woytowicz a list of eighteen quotations from text messages she had purportedly exchanged with the complaining student and asked her to respond. *Id.* ¶¶ 111–18. Mr. Muhammad stated that these texts "could be interpreted as sexual innuendo." *Id.* ¶ 118. Professor Woytowicz believed that Mr. Muhammad quoted these messages out of context. *Id.* ¶¶ 115–18. On May 20, 2016, Professor Woytowicz sent to Mr. Muhammad, through her counsel, a 74-page response to the complaint against her, in which she sought to give context to the aforementioned text messages. *Id.* ¶ 133. Mr. Muhammad did not respond to this document. *Id.* ¶ 140.

In June 2016, Mr. Muhammad emailed Professor Woytowicz and her counsel a nine-line written outline of the accusations against her, which she again found to be conclusory and vague. *Id.* ¶¶ 141–48. In July, Professor Woytowicz sent an 81-page response, arguing that the accusations in the June email were "materially different from the allegations Mr. Muhammad told Dr. Woytowicz about [orally]," and also that without seeing the "actual allegations," she would not be able to properly respond. *Id.* ¶¶ 149, 153. Mr. Muhammad did not respond to this document either. *Id.* ¶ 153.

In September 2016, Mr. Muhammad sent two emails indicating that after discussions between him, Dr. Michael King, Chair of the Chemistry Department, and Eric Arnesen, Vice Dean for Faculty and Administration in the University's College of Arts and Sciences, the

Chemistry Department had decided to seek an informal resolution to the complaint. *Id.* ¶¶ 154–55. In a November 2016 meeting, Mr. Muhammad stated that "he did not find evidence sufficient to support the complaint of sexual harassment," but that he had evidence of inappropriate behavior under the "Consensual Relationships" section of the University's Title IX Policy. *Id.* ¶¶ 159, 162. Mr. Muhammad told Professor Woytowicz that he believed there was evidence of a "verbal or physical" sexual relationship between Professor Woytowicz and the complainant, which violated the Policy's prohibition against "faculty member[s] . . . hav[ing] a sexual relationship with a student who is currently in his/her course or is subject to his/her supervision or evaluation." *Id.* ¶¶ 63, 163. Mr. Muhammad again proposed an informal resolution where Professor Woytowicz would not have to admit to violating the Title IX Policy, but would still likely receive a written reprimand and have to participate in training. *Id.* ¶ 170. Professor Woytowicz did not agree to an informal resolution because she was afraid of losing her contractual right of first refusal to teach her various courses. *Id.* ¶¶ 174–75.

In a January 2017 meeting, Mr. Muhammad reiterated his belief that the phrase "sexual relationship" in the Policy's Consensual Relationships provision included "verbal or physical conduct of a sexual nature," and that Professor Woytowicz had engaged in an improper sexual relationship with the complainant based on texts and emails mentioned in previous exchanges. *Id.* ¶¶ 186, 210. Dr. King stated in that meeting that he would "consider" allowing Professor Woytowicz to teach again if she agreed to an "informal resolution," but "did not say that he would appoint Professor Woytowicz to teach . . . or that Defendants would forego their power to bar her from teaching [in the future]." *Id.* ¶ 197. Professor Woytowicz objected to what she perceived as retaliatory behavior by the University and denied violating the Policy. *Id.* ¶¶ 198, 207.

On February 7, 2017, Professor Woytowicz noticed that her name was not on the Chemistry Department's summer teaching schedule. *Id.* ¶ 224. Professor Woytowicz spoke with Dr. King, who explained that "[h]e was barring her from teaching these courses because of what she had done" and that "he would never let her teach again while he was Chair of the Chemistry Department." *Id.* ¶ 227. The next day, Professor Woytowicz objected to this action through counsel, but Dr. King did not change his mind. *Id.* ¶¶ 228–31.

On February 14, 2017, Professor Woytowicz sent a 26-page response to Mr. Muhammad countering the allegations presented during the January 2017 meeting and objecting to any finding of misconduct. *Id.* ¶ 233. The response included a declaration from a former roommate of the complainant "stating that he never saw or heard anything to indicate that there had been a sexual relationship between Professor Woytowicz and the student complainant." *Id.* ¶¶ 234–35. In addition, she requested that Dr. King allow her to continue teaching Chemistry courses and that the University reimburse her for attorney's fees and expenses. *Id.* ¶ 235. On February 24, 2017, Professor Woytowicz officially rejected the informal resolution proposed at the January meeting. *Id.* ¶ 237.

On March 5, 2017, Dean Arnesen notified Professor Woytowicz by email that Mr. Muhammad had concluded his administrative review of the complaint and that Dean Arnesen had decided not to initiate formal proceedings against her under the University Policy. *Id.* ¶ 240. On March 10, 2017, Professor Woytowicz and her counsel met with Dr. King, Dean Arnesen, and counsel for the University. *Id.* ¶ 242. Dr. King and Dean Arnesen represented that this meeting was a "supervisor-subordinate" conversation outside of the scope of Title IX proceedings. *Id.* ¶ 243. However, Dr. King and Dean Arnesen repeatedly suggested that

Professor Woytowicz had engaged in "inappropriate" conduct and refused to answer her questions regarding the allegations against her. *Id.* ¶¶ 246–49.

On March 15, 2017, Dr. King issued a written reprimand of Professor Woytowicz, which again stated that she would not be reappointed to teach summer courses in the Chemistry Department. *Id.* ¶¶ 286–87. In May, Professor Christopher Bracey, Vice Provost of Faculty Affairs at the Elliott School of International Affairs, notified Professor Woytowicz that, after conversations with Dr. King and Dean Arnesen and after reviewing Dr. King's written reprimand, he was also barring her from teaching a spring semester course at the Elliott School. *Id.* ¶¶ 289–92. Professor Woytowicz communicated her objection to this decision to Vice Provost Bracey, but he refused to reconsider his decision or meet with her per her request. *Id.* ¶¶ 296–97.

On November 15, 2017, Professor Woytowicz filed suit in D.C. Superior Court, *see* Notice of Removal ¶ 1, ECF No. 1, and Defendants removed the case to this Court, *see id.* ¶¶ 3–7. Professor Woytowicz has since amended her complaint to bring her constitutional claims against Defendants Muhammad, King, Arnesen, and Bracey under a *Bivens* cause of action instead of 42 U.S.C. § 1983, Am. Compl. ¶ 4, but has otherwise preserved her original claims that the University violated her First and Fifth Amendment rights; and that all Defendants violated her right to freedom from conspiracy under the Ku Klux Klan Act, 42 U.S.C. § 1985; violated her rights to freedom from sex discrimination, sexual harassment, retaliation, and retaliatory harassment under the District of Columbia Human Rights Act; breached her contractual rights under the University's Collective Bargaining Agreement, its Title IX policy, and an agreement it had made with her to teach a writing seminar; and intentionally inflicted emotional distress on her. *Compare* Compl. ¶¶ 3, 463–540, ECF No. 1-1 *with* Am. Compl. ¶¶ 4,

583–667. She seeks back pay, compensatory damages, punitive damages, and injunctive relief. *See* Am. Compl. ¶¶ 550–574. Defendants have moved to dismiss Professor Woytowicz's Amended Complaint, and their motion is now ripe for decision.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits, but rather tests whether a plaintiff has properly stated a claim for which relief can be granted. It is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

# IV. ANALYSIS

## A. The Constitutional Claims

Professor Woytowicz has brought *Bivens* claims against the University and four of its employees for violating her First and Fifth Amendment rights in the course of the University's Title IX investigation.[2] *See* Am. Compl. ¶¶ 4(a)–(i). Defendants have moved to dismiss her constitutional claims on the ground that "private universities and their employees are not [governmental actors] subject to First and Fifth Amendment claims." Defs.' Mot. at 9. Professor Woytowicz responds that the University and its employees are governmental actors liable for constitutional violations because they: (1) performed a traditionally exclusive government function by conducting an "investigation[] to determine if Federal law [was] violated," Pl.'s Opp'n at 16; *see also* Am. Compl. ¶¶ 309–310, 438–445 (describing Mr. Muhammad's responsibilities which include "conduct[ing] investigations of [Title IX] complaints"); (2) received substantial funding from the government, *see* Pl.'s Opp'n at 13; *see also* Am. Compl. ¶¶ 302–306, 430–435 (arguing that Defendants Muhammad, King, Arnesen, and Bracey were "recipients" subject to Title IX requirements); (3) were bound by Title IX regulations, *see* Pl.'s Opp'n at 13–14; Am. Compl. ¶¶ 306–312; (4) attempted to follow those regulations to investigate the complaint at issue, Am. Compl. ¶¶ 460–462; and (5) were required to revise their

---

[2] More specifically, Professor Woytowicz claims that Defendants violated her First Amendment rights to (i) freedom of speech by prohibiting "communications with . . . present and former students," Am. Compl. ¶¶ 583–587, (ii) freedom from retaliation or "retaliatory harassment" for maintaining her innocence, *id.* ¶¶ 590–591, 607–611, (iii) freedom to associate or "intimate[ly] associat[e] with present or former students," *id.* ¶¶ 597–606; and her Fifth Amendment rights to (iv) freedom from sex discrimination, *id.* ¶¶ 614–616, (v) due process of law, *id.* ¶¶ 619–621, (vi) freedom from "retaliatory harassment for asserting her right to due process," *id.* ¶¶ 624–626, and (vii) freedom from Defendants "changing her status and barring her from teaching in violation of her liberty interests without the due process of law." *Id.* ¶¶ 627–630.

Title IX Policy after entering into the Voluntary Resolution Agreement with OCR in 2011, *see* Pl.'s Opp'n at 16; Am. Compl. ¶¶ 313–14. For the reasons stated below, the Court finds that the University and its employees were not government actors and therefore grants Defendants' motion to dismiss the constitutional claims against them.

As a preliminary matter, although Professor Woytowicz describes her claims against the University as arising under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, (1971), her claims against the University may not be brought under *Bivens* because entities, unlike individuals, are exempt from *Bivens* liability. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); *Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223, 1225–28 (D.C. Cir. 1994). As such, Professor Woytowicz has failed to cite a proper means by which she may sue the University for its alleged violations of her constitutional rights.

However, even if she had cited a valid cause of action against the University for constitutional violations, she has still failed to state a claim against the University and four of its employees because in order to raise a constitutional claim against a private entity or its employees, a plaintiff must allege that the entity or individual was a state or governmental actor or was engaging in state or government action. [3] *Abu-Jamal v. Nat'l Pub. Radio*, No. 96-0594, 1997 WL 527349, at *4 (D.D.C. Aug. 21, 1997), *aff'd*, 159 F.3d 635 (D.C. Cir. 1998). "[T]here can be no violation of the Constitution without [governmental] action—in this case, action by the federal government or under color of federal law—and [governmental] action requires that the party charged with the deprivation must be a person [or entity] who may fairly be said to be a [governmental] actor." *Daniels v. Union Pac. R. Co.*, 480 F. Supp. 2d 191, 196 (D.D.C. 2007),

---

[3] The terms "governmental actor" and "state actor" may be used interchangeably. *See, e.g.*, *Brug v. Nat'l Coal. for Homeless*, 45 F. Supp. 2d 33, 42 n.14 (D.D.C. 1999).

*aff'd*, 530 F.3d 936 (D.C. Cir. 2008) (quoting *Am. Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted)). A court may find that a private entity or individual is a governmental actor when (1) the private entity or individual performs a function that is "traditionally exclusively reserved to [government]," *LaRouche v. Fowler*, 152 F.3d 974, 990 (D.C. Cir. 1998) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157–58 (1978)); or (2) there is "a sufficiently close nexus between the [government] and the challenged action of the [regulated entity] so that the action of the latter may be fairly treated as that of the [government] itself," *Vill. of Bensenville v. Fed. Aviation Admin.*, 457 F.3d 52, 62 (D.C. Cir. 2006) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

As to the first type of government action by a private entity, the Supreme Court and the D.C. Circuit have found only in limited circumstances that a private entity has exercised a traditionally exclusive governmental or "public" function. *See, e.g.*, *Flagg Bros.*, 436 U.S. at 164 (resolution of private contractual disputes does not fall within the exclusive prerogative of the State, although the regulation of elections and the selection of public officials do); *All. for Cmty. Media v. FCC*, 56 F.3d 105, 113 (D.C. Cir. 1995) (decisions as to which programs would be shown on cable television systems are not traditionally within the exclusive province of the government, but, as the Supreme Court has held, vetoing liquor licenses and entering and occupying private property are), *aff'd in part, rev'd in part sub nom. Denver Area Educ. Telecomm. Consortium, Inc. v. FCC.*, 518 U.S. 727 (1996); *cf. Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 348 (4th Cir. 2000) (volunteer fire fighter company performed duties typically reserved to the state).

Courts in this Circuit have held that providing higher education is not an *exclusively* public function, *see, e.g.*, *Remy v. Howard Univ.*, 55 F. Supp. 2d 27, 30 (D.D.C. 1999), and

specifically that the Defendant University is not a state actor by virtue of providing higher education, *see Greenya v. George Wash. Univ.*, 512 F.2d 556, 561 n.10 (D.C. Cir. 1975). However, Professor Woytowicz's theory of government action is not based on the University and its employees' provision of higher education. Rather, Professor Woytowicz argues that the University and its employees performed a traditionally exclusive governmental function by "conduct[ing] [an] . . . investigation[] to determine if Federal law [was] violated." Pl.'s Opp'n at 16.

While courts in this Circuit have yet to address this theory, courts in other jurisdictions have found that private universities "investigating and disciplining employees for university policy violations," including for allegations of misconduct under Title IX, are not exercising a public function. *See, e.g.*, *Collins v. Northwestern Univ.*, 164 F. Supp. 3d 1071, 1077 (N.D. Ill. 2016) (finding that the university human resources department's investigation of a Title IX complaint against the plaintiffs did not constitute an exercise of an exclusive governmental function). Indeed, many private entities routinely investigate and self-police to ensure that they are in compliance with federal laws, whether they be anti-discrimination laws, government procurement laws, securities laws, or the Foreign Corrupt Practices Act. Yet Professor Woytowicz has not pointed to a single case in which such routine activities have been found to bring those otherwise private entities within the sphere of government action. Accordingly, the Court finds that Professor Woytowicz has failed to sufficiently allege that the University engaged in a traditionally exclusive governmental function.

More often, courts in this Circuit have found that a private entity engages in governmental action when "there is a sufficiently close nexus between [the government] and the challenged action of [the regulated entity]." *See, e.g.*, *Bensenville*, 457 F.3d at 62 (quoting *Blum*,

457 U.S. at 1004); *see also Peacock v. District of Columbia*, 794 F.3d 31, 43 (D.C. Cir. 2015). It is well-established that extensive regulation of a private entity alone does not create a sufficient nexus for finding governmental action. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 841–42 (1982); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357–58 (1974). Furthermore, a government's "[m]ere approval of or acquiescence in the initiatives of a private party" does not give rise to a sufficient nexus. *Bensenville*, 457 F.3d at 64 (quoting *Blum*, 457 U.S. at 1004). Finally, receipt of significant government funding does not create a sufficiently close nexus to transform a private entity into a governmental actor. *See, e.g.*, *Bensenville*, 457 F.3d at 64 ("The receipt of public funds, even of 'virtually all' of an entity's funding, is not sufficient to fairly attribute the entity's actions to the government." (citing *Rendell–Baker*, 457 U.S. at 840–41)); *Williams v. Howard Univ.*, 528 F.2d 658, 660 (D.C. Cir. 1976). This is so even when the government has attached various conditions to receipt of such funding. *See Greenya*, 512 F.2d at 561 (finding that conditions attached to the George Washington University's "government grants, loan, and loan guarantees" were not so pervasive as to "trigger constitutional guarantees in the University's relations with its employees"). Consequently, Professor Woytowicz's argument that the University was a governmental actor because it received substantial federal funding, conditioned upon the University's compliance with Title IX regulations, is unpersuasive. *See* Am. Compl. ¶¶ 302–312; Pl.'s Opp'n at 13–14.

Instead, to meet the "nexus" test, a plaintiff must typically show that the government exercised "coercive power" or "significant encouragement" over a private entity or individual's actions or decisions. *See Bensenville*, 457 F.3d at 64; *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1581 (D.C. Cir. 1984); *see also Lyles v. Hughes*, 964 F. Supp. 2d 4, 7 (D.D.C. 2013) ("[A] challenged activity may be [governmental] action when it results from the [government's]

exercise of coercive power, when the [government] provides significant encouragement, either overt or covert, or when a private actor operates as a willful participant in joint activity with the [government] or its agents."). Specifically, even when a legislative or regulatory scheme is imposed on a private entity, discretionary decisions made under such a scheme are not likely to constitute governmental action. *See Daniels v. Union Pac. R.R. Co.*, 480 F. Supp. 2d 191, 196–97 (D.D.C. 2007) (holding that although the Federal Railway Administration "heavily regulated" railroads by, among other actions, setting eligibility standards for engineers, because the defendant railroad company "exercise[d] a substantial amount of discretion in designing and implementing [its] procedures for certifying engineers, and the federal government d[id] not participate in these ground level decisions," there was no state action by the defendant); *see also All. for Cmty. Media*, 56 F.3d at 116.

Similarly, the government's thorough vetting and approval of a private entity's procedural scheme does not automatically transform the entity's, or its employees', actions under the approved scheme into governmental action. *See Bensenville*, 457 F.3d at 65–66 (finding that the Federal Aviation Administration's thorough screening and approval of the defendant City's airport layout plan did not implicate state action because the City was the "inventor, organizer, patron, and builder of the [airport] expansion," and the "length or intensity of [the agency's] attention to the actions of the party before approval" could not change the fact that the agency gave only its mere approval without creating the layout plan on its own); *cf. Jackson*, 419 U.S. at 357 (rejecting a Fourteenth Amendment claim because although "a [private] utility may frequently be required . . . to obtain approval for practices a business regulated in less detail would be free to institute without any approval from a regulatory body . . . [a]pproval by a state utility commission [which] has not [ordered a] proposed practice . . . does not transmute a

practice initiated by the utility and approved by the commission into state action." (internal

quotation marks omitted)). In cases where private universities have conducted Title IX

investigations, courts in other jurisdictions have found that unless a plaintiff sufficiently alleged

that the government was directly involved in a university's Title IX proceedings or compelled

the university to reach a particular disciplinary outcome, there was no governmental action on

the part of the institution. *See Doe v. Case W. Reserve Univ.*, No. 1:17 CV 414, 2017 WL

3840418, at *9–10 (N.D. Ohio Sept. 1, 2017)*; Doe v. Washington & Lee Univ.*, No. 6:14-cv-

00052, 2015 WL 4647996, at *8–9 (W.D. Va. Aug. 5, 2015).

Therefore, Professor Woytowicz's arguments that the University and its employees were

governmental actors because they (1) were bound by Title IX regulations, (2) attempted to

follow those regulations in carrying out their investigation of Professor Woytowicz, and (3) were

forced to revise the University's policies under the 2011 Agreement with OCR also fail to

demonstrate government action because they do not indicate that the government coerced or

exercised significant influence over the University or its employees in their creation of the

University's Title IX policies or more particularly in Defendants' Title IX investigation of

Professor Woytowicz. Although the government requires compliance with Title IX regulations as

a precondition of receiving funding, the University and its employees exercised ample discretion

in (1) establishing their own Title IX definitions and procedures, *see, e.g.*, Am. Compl. ¶¶ 61–63

(quoting the University's own definition of "Consensual Relationships"); *see generally*

University Policy; and (2) implementing those policies during their investigation of Professor

Woytowicz, *see, e.g.*, Am. Compl. ¶¶ 162–164, 186 (explaining the University's interpretation of

"consensual relationships" to include "verbal or physical conduct of a sexual nature"); *id.* ¶¶

170–172, 197 (discussing Defendants' proposal of an informal resolution); *id.* ¶ 240 (citing Dean

Arnesen's email where he explained his decision not to initiate a formal hearing upon conclusion of the administrative review). Because regulation of a private entity normally does not constitute a sufficient "nexus" without coercion or significant encouragement by the government, and because the University here exercised broad discretion within the bounds of the government's regulatory scheme, the Court finds that Professor Woytowicz's allegations are insufficient to constitute state action. *See Daniels*, 480 F. Supp. 2d at 193, 197; *see also Rendell-Baker*, 457 U.S. at 841–42.

Furthermore, Professor Woytowicz's complaint contains no factual allegations to support her claims that the government (1) forced the University to enter into the 2011 Agreement, or (2) made the University adopt certain revisions to its policies. *See* Pl.'s Opp'n at 13–14, 16. Professor Woytowicz asserts that "[t]he government has forced the University to change its policies to make them more to the government's liking," without making any factual allegations as to what changes the University actually made after entering into the Agreement and which of OCR's actions constituted coercion or significant encouragement. Pl.'s Opp'n at 16.[4] However, even when viewing the facts alleged in Professor Woytowicz's complaint in the light most favorable to her, it appears that the parties entered into the Agreement voluntarily and that whatever revisions the University made would have been subject merely to OCR's approval. *See generally* Agreement (stating that the Agreement is "[v]oluntary" between the parties). Accordingly, Professor Woytowicz has failed to sufficiently allege that the government coerced

---

[4] Professor Woytowicz articulates this allegation for the first time in her opposition briefing. *See* Pl.'s Opp'n at 16. Her amended complaint alleged only that the University's policies violated the terms of the Resolution Agreement. *See* Am. Compl. ¶¶ 316–320. But plaintiffs may not amend their complaints through briefs in opposition to motions to dismiss. *See Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010).

or significantly encouraged the University to revise its Title IX policies. *See Bensenville*, 457 F.3d at 66–67.[5]

For the foregoing reasons, the Court finds that because Professor Woytowicz has not alleged facts sufficient to plead that the University and its four employees involved in Professor Woytowicz's case were governmental actors, she cannot bring constitutional claims against them. As such, Professor Woytowicz cannot pursue her *Bivens* claims and the Court dismisses Counts 1 through 9.

## B. The § 1985 Claim

Professor Woytowicz also claims that Defendants violated her First and Fifth Amendment rights under the Ku Klux Klan Act, 42 U.S.C. § 1985.[6] Defendants seek dismissal

---

[5] Even if Professor Woytowicz had pleaded facts indicating that the government had coerced the University into adopting its current Title IX policies, because there is no indication in Professor Woytowicz's Amended Complaint that the government was directly involved in or dictated the outcome of the University's investigation, Professor Woytowicz has failed to plead state action. *See Doe v. Washington & Lee Univ.*, 2015 WL 4647996, at *9 (noting that, "for Fifth Amendment protections to apply, the government must have compelled the act of which Plaintiff complains," and finding that the state action requirement was not met when Plaintiff did not "allege that the government deprived [the university] of its autonomy to investigate and adjudicate charges").

[6] Professor Woytowicz alleged in her complaint that Defendants violated her "right under the (Ku Klux Klan) Act to be free from conspiracies to deprive her of her rights as a citizen of the United States" based on "animus against her [for] her female gender." Am. Compl. ¶ 633. The Act, however, "provides no substantial rights itself to the class conspired against . . . [and therefore] [t]he rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983) (internal quotation marks omitted); *see also Hairston v. District of Columbia*, 638 F. Supp. 198, 206 (D.D.C. 1986). Additionally, § 1985 may not be used to vindicate rights an employee might have under Title VII for sex discrimination. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979). Nonetheless, because Professor Woytowicz stated earlier in her complaint that Defendants violated § 1985(3) by conspiring to (1) deprive her of her "[c]onstitutionally guaranteed rights," Am. Compl. ¶ 4(j), including her rights to "due process" and "her property interest in continued teaching," and (2) punish her for "defending herself against the . . . complaint" and "resisting an unjustified reprimand," *id.* ¶ 503, the Court construes her complaint to allege that Defendants conspired to deprive her of her First and Fifth

18

of this claim on the ground that § 1985(3) does not provide a remedy for conspiracies among private actors. *See* Defs.' Mot. at 15–16. Professor Woytowicz responds that Defendants are governmental actors, and that even if the Court were to find otherwise, she has sufficiently alleged the requisite element of governmental "involvement," as distinguished from governmental action, to raise a § 1985(3) claim. *See* Pl.'s Opp'n at 18–19. The Court agrees with Defendants and dismisses Professor Woytowicz's § 1985 claim because she has failed to adequately plead governmental action or involvement as required to allege a conspiracy to deprive an individual of her First or Fifth Amendment rights under § 1985(3).

To state a claim under § 1985(3), a plaintiff must allege

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States. The statute does not apply to all conspiratorial tortious interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus.

*Leonard v. George Washington Univ. Hosp.*, 273 F. Supp. 3d 247, 256 (D.D.C. 2017) (quoting *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009)). In some instances, a plaintiff who alleges conspiracy to interfere with her constitutionally protected rights may not be required to plead governmental action, *see, e.g.*, *Griffin v. Breckenridge*, 403 U.S. 88, 105–06 (1971) (finding that the "right of interstate travel is constitutionally protected, does not necessarily rest on the Fourteenth Amendment, and is assertable against private as well as governmental interference"). However, if the allegation involves a "predicate constitutional

Amendment rights in violation of § 1985(3), based on her earlier articulation of those claims. *See infra* note 2.

violation [that] itself requires [a showing of] governmental action, then so does [the] § 1985(3) claim." *Bois v. Marsh*, 801 F.2d 462, 476 n.6 (D.C. Cir. 1986) (citing *Scott*, 463 U.S. at 831–34); *see also Scott*, 463 U.S. at 833 ("Because that Amendment restrains only official conduct, to make out their § 1985(3) case, it was necessary for respondents to prove that the state was somehow involved in or affected by the conspiracy.").

Courts in this Circuit have held that First and Fifth Amendment violation claims require a showing of governmental action, and therefore a plaintiff who alleges conspiracy to interfere with First and Fifth Amendment rights under § 1985(3) must also sufficiently plead that defendants were governmental actors. *See, e.g.*, *Anderson v. USAir, Inc.*, 818 F.2d 49, 56 (D.C. Cir. 1987) (finding that the plaintiff's "Fifth Amendment claim fails because [the] private corporation[] is not a state actor."); *Provisional Gov't of Republic of New Afrika v. Am. Broad. Companies, Inc.*, 609 F. Supp. 104, 109 (D.D.C. 1985) (dismissing the plaintiff's First Amendment claim under § 1985(3) because the plaintiff did not sufficiently plead "the requisite element of state action."). Because, as explained above, Professor Woytowicz has failed to sufficiently plead governmental action by Defendants, the Court dismisses her § 1985 claim.

### C. Breach of Contract Claims

The Court next turns to Professor Woytowicz's breach of contract claims, which have triggered several disagreements between the parties, such as: (1) whether Professor Woytowicz may withdraw her breach of the Collective Bargaining Agreement claim in her opposition brief to Defendants' motion to dismiss; and (2) whether Professor Woytowicz has alleged any breach of contract claims that are (a) not preempted by Section 301 of the Labor Management Relations Act and (b) not opposed by Defendants. *See* Defs.' Mot. at 17–19; Pl.'s Opp'n at 21; Defs.' Reply at 6–7. As explained below, the Court finds that Professor Woytowicz may not withdraw

her breach of the CBA claim through her opposition brief, and also finds that her claim is preempted by Section 301 of the LMRA and has not been properly exhausted as required by the Act. Therefore, the Court dismisses her claim for breach of the CBA. However, the Court agrees with Professor Woytowicz that she has raised other breach of contract claims that are neither preempted by Section 301 nor opposed by Defendants. The Court declines to exercise supplemental jurisdiction over those claims and, as explained below, will remand them to D.C. Superior Court.

### 1. Attempt to Withdraw a Claim

In her opposition brief, Professor Woytowicz informed the Court that she "withdraws her claim for breach of the collective bargaining agreement" and the corresponding paragraphs from the Amended Complaint. Pl.'s Opp'n at 21. She provides no reason for this decision. *See* Pl.'s Opp'n at 21. However, she asserts that she "has alleged *other* breach of contract claims, which Defendants have *not* moved to dismiss," Pl.'s Opp'n at 21 (emphasis added), and therefore, which must survive Defendants' motion.

Defendants chide Professor Woytowicz's response as "nonsense" for two reasons. Defs.' Reply at 6. First, Defendants argue that "[Professor] Woytowicz cannot use her opposition to a motion to dismiss to 'withdraw' an allegation she cannot sustain." Defs.' Reply at 6 (citing *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 165 n.10 (D.D.C. 2014)). In support of this argument, Defendants point out that they raised this preemption issue in their motion to dismiss her original complaint, but Professor Woytowicz still chose to include her breach of the CBA claim in her Amended Complaint. *See* Defs.' Reply at 6; *see also* Defs.' Mot. Dismiss ("Defs.' 1st Mot.") at 15–17, ECF No. 4. Second, Defendants challenge Professor Woytowicz's assertion that she has alleged breaches of contracts "other than the collective bargaining agreement." Defs.' Reply at 6–7. The Court agrees with Defendants that the breach of the CBA

claim cannot be withdrawn through Professor Woytowicz's opposition brief, and therefore that the Court must evaluate the sufficiency of her pleadings. However, the Court finds that Professor Woytowicz has indeed raised other breach of contract claims that she has not attempted to withdraw, and which Defendants have not challenged, and which therefore survive Defendants' motion to dismiss.

Under Federal Rule of Civil Procedure 15, a party may amend its pleading within 21 days of filing, with the consent of the parties, or with the consent of the court. *See* Fed. R. Civ. P. 15(a)(1), (a)(2). A court may, for example, permit a party to correct its pleading when it has made an innocent mistake. *See, e.g.*, *Stewart v. Bowser*, 296 F. Supp. 3d 88, 91 (D.D.C. 2017) (allowing plaintiff to amend its complaint to substitute the correct defendants). However, "[i]t is well settled law that a plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss." *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014) (citations omitted). "To hold otherwise would mean that a party could unilaterally amend a complaint at will." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989); *see Friedman v. Village of Skokie*, 763 F.2d 236, 239 (7th Cir. 1985) ("Filing an amendment to a complaint without seeking leave of court or written consent of the parties is a nullity."). Courts in this District treat a withdrawal of a claim as it would an amendment to a complaint. *See, e.g.*, *Barnes v. District of Columbia*, 42 F. Supp. 3d 111, 120 (D.D.C. 2014) (treating withdrawal of claims as a motion to amend the complaint); *Featherston v. District of Columbia*, 910 F. Supp. 2d 1, 10–11 (D.D.C. 2012) (same).

The Court finds Professor Woytowicz's attempt to withdraw her claim to be an effort to amend her Amended Complaint, and as such, cannot allow her to withdraw her breach of the CBA claim and the corresponding paragraphs through her opposition brief. *See, e.g.*, *Barnes*, 42

F. Supp. 3d at 120; *Featherston*, 910 F. Supp. 2d at 10–11. Neither Defendants nor this Court have consented to such an amendment. *See* Fed. R. Civ. P. 15(a)(1), (a)(2). And even though she does not expressly provide any reason for the withdrawal, it does not appear that Professor Woytowicz seeks to correct an innocent mistake. *Cf. Stewart*, 296 F. Supp. 3d at 91 (allowing plaintiff to substitute the correct defendants). Additionally, Professor Woytowicz does not offer any reason as to why she should be permitted to withdraw this claim now or why she did not withdraw this claim before filing her amended complaint, especially after Defendants raised the preemption issue in their first motion to dismiss. *See* Pl.'s Opp'n at 21; Defs.' Reply at 6; Defs.' 1st Mot. at 15–17. Therefore, the Court cannot allow Professor Woytowicz to withdraw her breach of the CBA claim, and must evaluate the sufficiency with which it was pled.

### 2. Preemption and Exhaustion Under the Labor Management Relations Act

Professor Woytowicz has sued the University and four of its employees for violating her rights under her union's Collective Bargaining Agreement with the University. As explained above, when Defendants moved to dismiss this claim as improperly pleaded, Professor Woytowicz attempted to withdraw the claim in her opposition to Defendants' motion to dismiss, rather than defend the claim against Defendants' arguments. For the reasons given below, the Court dismisses Professor Woytowicz's claim for breach of the CBA.

As Defendants have argued, the proper framework with which to review Professor Woytowicz's breach of the CBA claim is Section 301 of the LMRA. *See* 29 U.S.C. § 185; *Jackson v. Teamsters Local Union 922*, 991 F. Supp. 2d 71, 80 (D.D.C. 2014). "Section 301 of the [LRMA] confers federal jurisdiction over '[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.'" *Id.* (quoting 29 U.S.C. § 185(a)). The statutory language is broadly read to also include suits "by

and against individual employees." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976); *see also Carrington v. United States*, 42 F. Supp. 3d 156, 161 (D.D.C. 2014). Accordingly, Congress intended Section 301 to "completely preempt[] any action predicated upon state law if that action 'depends upon the meaning of a collective-bargaining agreement.'" *Cephas v. MVM, Inc.*, 520 F.3d 480, 484 (D.C. Cir. 2008) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988)); *see, e.g.*, *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (reviewing a breach of a CBA claim under Section 301 even though "the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available only under state law.").

"Although an employee may sue an employer under § 301 for breach of a CBA, the employee first must exhaust the grievance and arbitration procedures in the CBA." *Cephas*, 520 F.3d at 485 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965)); *cf. Clayton v. Automobile Workers*, 451 U.S. 679, 687–98 (1981) (explaining that while an employee must exhaust CBA grievance procedures before filing suit, she will not always need to exhaust *internal* union grievance procedures first). Professor Woytowicz's Amended Complaint contains no allegations that she has exhausted the CBA's grievance or arbitration procedures. *Cf.* Am. Compl. ¶ 658 (explaining that if she were to engage in the grievance procedures outlined in the University's CBA, she would waive her ability to bring the other claims she has brought in this suit). Therefore, Defendants argue that Professor Woytowicz's breach of the CBA claim is (1) preempted by Section 301 of the LMRA, and (2) must be dismissed because she has failed to first participate in the CBA's grievance procedures. *See* Defs.' Mot. at 18–19. The Court agrees on both counts.

Professor Woytowicz's breach of the CBA claim is preempted by Section 301 of the LMRA. Section 301 governs the claim because it is brought by an individual employee against her employer for violation of a CBA and "depends upon the meaning of a collective-bargaining agreement." *Lingle*, 486 U.S. at 406; *see* 29 U.S.C. § 185; *Hines,* 424 U.S. at 562; Am. Compl. ¶ 660 ("All Defendants have breached Prof. Woytowicz's contractual rights under the Collective Bargaining Agreement."). Therefore, even if Professor Woytowicz properly alleges an "action predicated upon state law," Section 301 preempts it. *Cephas*, 520 F.3d at 484 (citation omitted); *see also Franchise Tax Bd*., 463 U.S. at 23. Because Professor Woytowicz's breach of the CBA claim is preempted by Section 301, and because Professor Woytowicz implicitly admits that she did not engage in the CBA's grievance and arbitration procedures before bringing this action, *see* Am. Compl. ¶ 658, her claim must be dismissed.

### 3. Additional Breach of Contract Claims

It appears, however, that Professor Woytowicz has alleged additional breach of contract claims that are not preempted by Section 301 and not opposed in Defendants' motion to dismiss. Defendants argue that Professor Woytowicz "alleges *no* breach of contract other than the collective bargaining agreement." *See* Defs.' Reply Supp. at 6–7 (emphasis in original). And Professor Woytowicz does not identify which breach of contract claims she refers to when she asserts that "Plaintiff has alleged other breach of contract claims, which Defendants have not moved to dismiss," Pl.'s Opp'n at 21. However, Professor Woytowicz indeed refers to two other breaches of contracts under Count 14 along with her breach of the CBA claim: (1) breach of Defendants' Title IX policy and (2) breach of a "contractual right to conduct the program for the Writing in the Discipline project." Am. Compl. ¶¶ 656, 661–62. Neither of these allegations would be preempted by Section 301 of the LMRA because they do not "depend[] on the meaning

of a collective-bargaining agreement." *Lingle*, 486 U.S. at 406; *see* 29 U.S.C. § 185. And neither of these allegations were challenged by Defendants in their motion to dismiss the Amended Complaint. *See generally* Defs.' Mot. As such, despite the leanness with which they are pled, *see* Am. Compl. 655–663, the Court cannot dismiss these common law contract claims. [7]

### D. The Remaining State Law Claims

Having dismissed all of Professor Woytowicz's federal claims, the Court now turns to her remaining state law claims. Professor Woytowicz has brought sex discrimination, hostile work environment, and retaliation claims under the DCHRA, as well as common law breach of contract and intentional infliction of emotional distress claims. *See* Am. Compl. ¶¶ 636–67; *see also* Pl.'s Opp'n at 21, 24–25. Defendants argue that the Court should exercise supplemental jurisdiction over these counts and dismiss them because Professor Woytowicz has not sufficiently alleged facts that support each claim and because these claims present no "novel or complex issue of State law," *see* Defs.' Mot. at 19–27 (quoting 28 U.S.C. § 1367(c)(1)). On the other hand, Professor Woytowicz contends that she has in fact adequately pleaded her claims, *see* Pl.'s Opp'n at 22–30. For the reasons explained below, the Court declines to exercise supplemental jurisdiction over Professor Woytowicz's remaining state law claims and remands those claims to D.C. Superior Court, from which they were originally removed.

After a federal district court dismisses all the federal claims in an action, it may—at its discretion—exercise supplemental jurisdiction over any remaining state law claims. *See*

---

[7] As asserted, the breach of "[Defendants'] Title IX policy" is a state law claim. While this breach of contract claim will involve analysis of a policy inspired by a federal statute, Title IX is not "the subject matter of the controversy" and therefore the claim does not arise under federal discrimination law. *See Gunn v. Minton*, 568 U.S. 251, 257–58 (2013) (remanding plaintiff's state law malpractice claim involving an allegedly botched patent case after finding that the malpractice claim did not "arise under" federal law).

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265-66 (D.C. Cir. 1995); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not a plaintiff's right."). The Supreme Court has explained that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Considerations of "judicial economy," "convenience," and "fairness to litigants" inform the court's use of its discretion. *United Mine Workers*, 383 U.S. at 726; *see* 28 U.S.C. § 1367(c)(3).

Courts in this District, for example, have justified their decision to not exercise supplemental jurisdiction over state law claims when: (1) "[a]ll federal claims against Defendants have been dismissed"; (2) "[t]he case has not progressed in federal court past motions for judgment on the pleadings"; (3) "discovery has just commenced"; and (4) "the Court has developed little familiarity with the issues presented." *Mpoy v. Fenty*, 901 F. Supp. 2d 144, 158–59 (D.D.C. 2012); *see also Rodriguez v. Shulman*, 844 F. Supp. 2d 1, 14 (D.D.C. 2012) (declining to exercise supplemental jurisdiction over state law claims because the case "ha[d] not progressed past the Motion to Dismiss stage, nor ha[d] the Court invested substantial time and resources in the case").

Even though this Court has the discretion to exercise supplemental jurisdiction, *Edmondson*, 48 F.3d at 1265–66, the balance of considerations "point[s] toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7. In this case, the Court has little—if any—justification for adjudicating the state law claims based on the interest in judicial economy, convenience, or fairness to the parties. *See* 28

U.S.C. § 1367(c)(3); *United Mine Workers*, 383 U.S. at 726. To the contrary, first, all federal claims have been dismissed from this action. *See supra* Section III.A; *Mpoy*, 901 F. Supp. 2d at 159. Second, this action is still at the motion to dismiss stage. *See Mpoy*, 901 F. Supp. 2d at 159; *Rodriguez*, 844 F. Supp. 2d at 14. Third, the Court has not invested significant time and resources toward adjudicating the merits of the issues. *See Mpoy*, 901 F. Supp. 2d at 159; *Rodriguez*, 844 F. Supp. 2d at 14. And fourth, because Professor Woytowicz originally filed this action in D.C. Superior Court, she will not be prejudiced by the case's return to her preferred forum. *See Turpin v. Ray*, 2018 WL 3404149, at *10 (D.D.C. July 12, 2018). On balance, these considerations compel the Court to decline to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, this Court remands the remaining state law claims to D.C. Superior Court.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 10) is **GRANTED IN PART AND DENIED IN PART**. Professor Woytowicz's constitutional and § 1985 claims, as well her claim for breach of the University's CBA, are hereby dismissed, while her remaining D.C. statutory and common law claims are hereby remanded to D.C. Superior Court. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 27, 2018                                        RUDOLPH CONTRERAS
                                                             United States District Judge